Citation Nr: 1823346 
Decision Date: 04/16/18 Archive Date: 04/25/18

DOCKET NO. 13-17 448 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for a bilateral hearing loss disability.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

N. Rippel, Counsel


INTRODUCTION

The Veteran served on active duty from September 1974 to July 1975. 

This matter comes before the Board of Veterans' Appeals (Board) from a June 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. 

On November 17, 2015, the appellant appeared at a hearing before Veterans Law Judge (VLJ) Cheryl Mason. Since that time, VLJ Mason has been sworn in as the Board's Chairman. Pursuant to 38 U.S.C. 7102(b), a proceeding may not be assigned to the Chairman as an individual member. However, the Chairman may participate in a proceeding, such as this, which has been assigned to a panel. In February 2018, the appellant was offered and declined another hearing before the other Veterans Law Judges assigned to decide his appeal. 

The claim was remanded in February 2016 and again in September 2017 in order to obtain medical records and to afford the Veteran an audiological examination with etiological opinion. As all required efforts were made to obtain the medical records, and the requested medical examination with opinion was obtained, the Board finds the directives have been substantially complied with, and the matter again is before the Board. Stegall v. West, 11 Vet. App. 268, 271 (1998).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).


FINDING OF FACT

Bilateral hearing loss disability has not been shown to have had its onset in service or within one year of service, nor is such disability shown to have been caused or aggravated by disease or injury in active military service.


CONCLUSION OF LAW

Bilateral hearing loss disability was not incurred in or aggravated during service, and an organic disease of the nervous system, bilateral sensorineural hearing loss, may not be presumed to have been incurred therein. 38 U.S.C. §§ 1101, 1110, 1131, 1112, 1113, 1137 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that he has hearing loss due to conceded in-service acoustic trauma. He contends that his separation audiogram was altered by the medical technician conducting the audiogram in order to reflect normal hearing, thereby allowing him to be discharged as scheduled. Finally, he asserts he underwent audiological evaluation at a VA facility promptly after service, in 1975 or 1976, because of perceived hearing loss. 

Law

Veterans are entitled to compensation if they develop a disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110 (wartime service), 1131 (peacetime service).

To establish entitlement to service-connected compensation benefits, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service -the so-called 'nexus' requirement." Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999).

The Veteran has bilateral sensorineural hearing loss, an organic disease of the nervous system, which is identified as a "chronic disease" under 38 U.S.C. 1101 and 38 C.F.R. § 3.309 (a), and is presumed to have been incurred in service if manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307 (a), 3.309(a). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (the theory of continuity of symptomatology can be used only in cases involving those disabilities specified as chronic under 38 C.F.R. § 3.309 (a)).

With respect to claims for service connection for hearing loss, the United States Court of Appeals for Veterans Claims (Court) has held that the threshold for normal hearing is from 0 to 20 decibels, and that higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). The Court further opined that 38 C.F.R. § 3.385, discussed below, then operates to establish when a hearing loss disability can be service connected. Id. at 159.

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.


Analysis

The Veteran was exposed to noise in service by virtue of his duties as an Army truck driver and transport operator. He also has current bilateral hearing loss disability for VA purposes. The critical question, thus, is whether his current hearing loss disability is related to his in-service noise exposure or otherwise to service. For the following reasons, the Board finds that it is not related. 

Service treatment records reflect he denied ear, nose and throat trouble or hearing loss during a September 1974 enlistment examination. His ears were normal and the audiogram results reflect puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
5
5
5
-
20
LEFT
5
5
10
-
15

He was treated on one occasion in May 1975 for an upper respiratory infection (URI) and otitis media. On the separation examination history report in July 1975, the Veteran checked yes in response to ear, nose and throat trouble along with hearing loss. He reported his left ear could not hear very well and he would get colds very easily in cold weather. The examiner summarized that there was trouble hearing on the left by history. The accompanying audiogram appears to have had threshold values ranging from 90 to 20 entered initially, which were crossed out and replaced with the following, along with the notes, "repeat hearing" and "OK":




HERTZ



500
1000
2000
3000
4000
RIGHT
10
0
10
-
20
LEFT
10
0
0
-
10

No defects were listed on the examination report, and the Veteran was deemed qualified for separation. The document was signed by a military physician.

Following service, bilateral high frequency hearing loss was not documented until decades later. VA audiology consultation reflects bilateral high frequency sensorineural hearing loss in November 2005, with the Veteran relating the loss to in-service noise exposure. A February 2006 VA examination report reflects the diagnosis of bilateral high frequency hearing loss. In a May 2010 SSA disability general examination, the Veteran reported a history of hearing loss and poor vision since 1974, attributing hearing loss and ringing in the ears to loud noises on the rifle range in 1974. A June 2011 examination report reflects the examiner's opinion that current bilateral sensorineural hearing loss was less likely as not due to service. 

Parenthetically, the Board notes that service connection for tinnitus was granted in the June 2011 rating decision.

The Veteran argues that the initial, crossed out results on the 1975 separation audiogram reflected his real level of hearing loss at that time, and appreciable hearing loss has continued to the present time. He also states that the in-service examiner disbelieved the validity of the higher initial threshold results and in fact took the audio test himself and substituted his lower results to allow the Veteran to separate. However, the Board finds that the weight of the evidence is against this assertion. The July 1975 examination report is in fact signed by a physician and is presumed valid on its face. It is certainly true that the values were revised, but the corrections were part of a report signed by the military physician certifying the document. The Veteran's assertion, made years after the 1975 report, are judged to be of insufficient probative weight to allow for a conclusion that the revised values are not valid or were improperly entered. 

The Veteran also argues that he noticed hearing loss immediately upon service separation and sought an audiogram at the VAMC Mountain Home sometime in 1975 or 1976. He has been unable to obtain a copy of this audiogram. The RO has also attempted to find this record, but a thorough search has failed to disclose record of such an examination at Mountain Home VAMC, although that facility has provided all available records. Thus, the Board cannot conclude that there is any documentation of evaluation for hearing loss in the year immediately following service separation.

The Veteran was afforded VA examination and opinion in connection with the Board's two remands. The January 2017 examination report considered the entire record to include literature submitted by the Veteran, and contains the following opinion:

The issue is whether or not the veteran's present bilateral hearing loss is related to military noise exposure. His VBMS file was reviewed for this addendum. The veteran's MOS was motor transport operator. Military noise exposure is conceded. The relationship between impulse or steady-state noise exposure and it's affects on the auditory system is well documented in the literature. The evidence regarding the association of the veteran's present hearing loss and military service, however, does not support his claim. His enlistment physical exam dated 9/19/74 provided the following puretone thresholds for the right ear: 5 dB HTL at 500 Hz, 5 dB HTL at 1000 Hz, 5 dB HTL at 2000 HZ, and 20 dB HTL at 4000 Hz. Puretone thresholds for the left ear were: 5 dB HTL at500 Hz, 5 dB HTL at 1000 Hz, 10 dB HTL at 2000 Hz, and 15 dB HTL at 4000 Hz. His separation physical exam dated 7/16/75 provided the following puretone thresholds for the right ear: 10 dB HTL at 500 Hz, 0 dB HTL at 1000 Hz, 10 dB HTL at 2000Hz, and 20 dB HTL at 4000 Hz. Thresholds for the left ear were: 10 dB HTL at 500Hz, 0 dB HTL at 1000 Hz, 0 dB HTL at 2000 Hz, and 10 dB HTL at 4000 Hz. The difference between the veteran's puretone thresholds on the two hearing tests is insignificant, and reflects hearing well within normal limits bilaterally. The literature regarding the effects of noise exposure and hearing loss does not support the concept of delayed hearing loss. This examiner maintains that the veteran's present bilaterally hearing loss is less likely as not related to military noise exposure.

The Board thereafter found this negative opinion did not fully comply with the remand instructions inasmuch as the examiner failed to discuss the significance of the Veteran's July 1975, Report of Medical History, which notes the Veteran's reported hearing loss and a history of trouble hearing in the left ear. An addendum was obtained in November 2017, which was as follows:

The veteran's VBMS file was read again for this addendum. The issue is whether or not the veteran's present bilateral hearing loss is related to noise exposure while serving in the Army from 9/30/74 to 7/29/75. This examiner clearly provided pertinent information regarding the lack of a nexus between the veteran's military service and his existing hearing loss. The veteran's Report of Medical History, dated 7/16/75 is duly noted. The fact remains, however, he entered and separated from the Army with normal hearing bilaterally. Furthermore, a comparison of his enlistment and separation puretone thresholds did not indicate a significant change. He stated that his hearing problems began approximately six months after he separated from the Army. Again, there is no research data supporting the concept of delayed onset for noise-induced hearing loss. Regardless of the veteran's present claim that his hearing loss began while in the Army, there is no audiometric data in his STRs supporting this claim. It remains this examiner's opinion that the veteran's present bilateral hearing loss is less likely as not related to military noise exposure.

Based on the above, the Board concludes that the Veteran did not have hearing loss in service; his hearing was normal bilaterally. Nor did he have hearing loss disability within a year of service separation. See Buczynski v. Shinseki, 24 Vet. App. 221 (2011)(holding a lack of notation where it would be expected, to include during treatment or examination, is noteworthy). Although the Veteran testified that he in fact had noticed hearing loss at separation and in the months following service, the documented record reflects that hearing was normal at separation and hearing loss disability initially manifested many years following service. The Board emphasizes the multi-year gap between discharge from active duty service (1975) and evidence of disability in approximately 2005. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for disability can be considered as a factor in resolving claim). Thus, hearing loss has not been shown to manifest during service or within one year after separation from service. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131; 38 C.F.R. §§ 3.307, 3.309. 

Despite the Veteran's report and the notation of left ear hearing loss by history at separation, he did not, in fact, have hearing loss or hearing loss disability. Rather, the separation examination was normal. The Board also notes that although sensorineural hearing loss is an enumerated chronic disease, it was not noted or diagnosed during service or within one year after separation. As noted by the Federal Circuit in Walker, the regulation equates "shown in service" with a reliable diagnosis of the chronic disease while in service. The Veteran's report of left ear decreased acuity and the summary of left ear hearing loss "by history" do not equate to a reliable diagnosis of the chronic disease within the meaning of Walker. As the evidence establishes that the Veteran did not have characteristic manifestations of the disease process during service or within one year after separation, service connection under 38 C.F.R. § 3.303 (b) is not applicable. Similarly the normal separation examination establishes that he did not have continuity of symptomatology.

Moreover, the medical opinion evidence preponderates against a relationship between the current bilateral hearing loss and in-service noise exposure. There are no competent, credible and positive nexus opinions of record. Rather, the highly probative 2017 VA opinion evidence is wholly against this claim. 

To the extent that the Veteran argues, generally, that hearing loss was present since service, his assertions are outweighed by the lack of documented hearing loss treatment or complaints in the post service record until 2005. Furthermore, the Veteran's lay statements that current hearing loss is related to service are outweighed by the 2017 VA examiner's opinions that considered the Veteran's statements, clinical results, and accepted noise exposure consistent with the Veteran's assertions. Critically, the examiner considered the Veteran's July 1975 complaints about hearing loss, and provided reasons to support his opinion that hearing was well within normal limits bilaterally at separation. This opinion is adopted by the Board. See Owens v. Brown, 7 Vet. App. 429, 433 (1995); Wray v. Brown, 7 Vet. App. 488 (1995) (the Board may adopt a particular independent medical expert's opinion for its reasons and bases where the expert has fairly considered the material evidence of record). 

Therefore, the benefit of the doubt rule is not for application because the evidence is not in relative equipoise. The benefits sought on appeal are accordingly denied. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

Finally, neither the Veteran (nor his representative) raised issues with respect to VA's duty to notify or assist or presented other procedural arguments that were not addressed above. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board...to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). In a January 2018 communication following the last remand, the Veteran's representative stated he had no additional evidence to submit and that he wanted the claim to proceed to adjudication. 


ORDER

Service connection for a bilateral hearing loss disability is denied.




__________________________ __________________________
 C. TRUEBA H. N. SCHWARTZ
 Veterans Law Judge, Veterans Law Judge,
 Board of Veterans' Appeals Board of Veterans' Appeals




_________________________________________________
CHERYL L. MASON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs